Filed 5/29/13  P. v. Dannenberg CA1/2
Opinion following remand from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>ERIC DANNENBERG,<br><br>       Defendant and Appellant. | A123194<br><br>(Alameda County<br>Super. Ct. No. C132302) |

In 2008, a jury found defendant to be a sexually violent predator (SVP), as defined in the Sexually Violent Predator Act (Welf. & Inst. Code, § 6600 et seq.) (SVPA).[1] Defendant appealed from the order committing him to the Department of Mental Health (DMH) for an indeterminate term pursuant to section 6604.  The petition to commit defendant as an SVP was filed prior to the passage of Proposition 83.  Proposition 83 passed in November 2006, and the SVPA was amended.  The petition against defendant was amended to reflect an indeterminate commitment pursuant to the amended SVPA.

Defendant appealed the commitment order and argued that committing him pursuant to the amended SVPA was an improper retroactive application of the statute and that the amended SVPA violated the due process, equal protection, ex post facto, and double jeopardy clauses of the state and federal Constitution.  In our nonpublished

---

[1] All unspecified code sections refer to the Welfare and Institutions Code.

1

opinion filed on June 3, 2010, we rejected all of defendant's contentions except for his challenge to the SVP statute on equal protection grounds. As to that issue, we directed a remand for further proceedings consistent with *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee I*).

The California Supreme Court granted review and transferred the matter to us with directions to vacate our decision and to suspend further proceedings pending finality of the proceedings on remand in *McKee I, supra,* 47 Cal.4th 1172. The San Diego County Superior Court conducted the evidentiary hearing required by *McKee I,* and concluded that the People had met their burden of justifying the disparate treatment of SVP's, and confirmed the indeterminate commitment. The Court of Appeal affirmed. (*People v. McKee* (2012) 207 Cal.App.4th 1325 (*McKee II*).) The Supreme Court denied Richard McKee's petition for review and thus this case is now final. Accordingly, we now reconsider defendant's equal protection argument in light of *McKee II*.

We reiterate our previous opinion on all issues except as to our remand based on defendant's equal protection claim. Having considered defendant's equal protection contention in light of *McKee I* and *McKee II,* we affirm the order of commitment.

## BACKGROUND

The facts of the predicate offenses are only briefly summarized since these facts are not relevant to the legal issues raised on appeal. On September 6, 1981, when defendant was 19 years old, defendant had a knife and forced a 15-year-old boy to orally copulate him. Defendant was convicted of violating Penal Code section 288, subdivision (a), and sentenced to three years in prison.

In 1985, defendant forced a 14-year-old boy to orally copulate him. Defendant was convicted of violating Penal Code section 288, subdivision (c), and sentenced to six years in prison.

In 1988, defendant met two teenage boys and bound one of the boys, before threatening him with scissors, sodomizing him, and orally copulating him. Defendant was convicted of violating Penal Code section 286, subdivision (c), and section 288, subdivision (a)(c). He received a 10-year prison commitment.

2

While in prison, defendant had multiple rule violations.

On March 5, 1998, a petition was filed seeking to commit defendant as an SVP pursuant to the SVPA. Proposition 83 passed in November of 2006, and the petition was amended to reflect an indeterminate commitment.

Defendant had a jury trial, which began on September 18, 2008. The jury considered the evaluations of defendant by Dr. Dawn Starr and Dr. Jack Vognsen. Both Starr and Vognsen found that defendant met the criteria of an SVP.

Dr. Starr diagnosed defendant with paraphilia not otherwise specified, personality disorder not otherwise specified with antisocial and narcissistic features, and sexual sadism. She stated that true paraphilia is chronic and lifelong. She assessed defendant's risk to reoffend, if not kept in a locked facility, as high.

Dr. Vognsen diagnosed defendant with paraphilia not otherwise specified, sexual sadism, and anti-social personality disorder. Using a number of tests, he concluded that defendant scored in the high-risk category.

On October 15, 2008, the jury found the petition to be true. The court ordered defendant committed for an indeterminate amount of time.

Defendant filed a timely notice of appeal, and we requested supplemental briefing to discuss the effect of *McKee I, supra,* 47 Cal.4th 1172. We issued a nonpublished opinion on June 3, 2010. We remanded for a hearing on defendant's equal protection claim, but otherwise affirmed the lower court's judgment and order.

On August 18, 2010, the California Supreme Court granted the People's petition for review. The court transferred the matter to this court "with directions to vacate [our] decision and, in order to avoid an unnecessary multiplicity of proceedings, to suspend further proceedings pending finality of the proceedings on remand" in *McKee I.* The order specified, " 'Finality of the proceedings' shall include the finality of any subsequent appeal and any proceedings in this court."

On August 20, 2010, pursuant to the Supreme Court's order, we vacated our decision and suspended further proceedings pending finality of the proceedings on remand in *McKee I.*

The San Diego County Superior Court conducted the evidentiary hearing required by *McKee I*, and concluded that the People had met their burden of justifying the disparate treatment of SVP's, and confirmed the indeterminate commitment. The Court of Appeal affirmed. (*McKee II, supra,* 207 Cal.App.4th 1325.) The Supreme Court denied McKee's petition for review and thus this case became final. On April 16, 2013, we issued an order requesting the parties to file a brief to address the effect of *McKee II* on defendant's equal protection claim.

**DISCUSSION**

**I. *The SVPA and Proposition 83***

At the time the petition was filed seeking to commit defendant as an SVP, the SVPA (Stats. 1995, ch. 763, § 3, p. 5922) provided for the involuntary civil commitment for a two-year term of confinement and treatment of persons who, by a unanimous jury verdict after trial (former §§ 6603, subd. (d), 6604), are found beyond a reasonable doubt to be an SVP (former § 6604). (*People v. Williams* (2003) 31 Cal.4th 757, 764.) A person's commitment could not be extended beyond that two-year term unless a new petition was filed requesting a successive two-year commitment. (Former §§ 6604, 6604.1; *Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243, fn. 5.) On filing of a recommitment petition, a new jury trial would be conducted at which the People again had the burden to prove beyond a reasonable doubt that the person was currently an SVP. (Former §§ 6604, 6605, subds. (d), (e).) As originally enacted, an SVP was defined as "a person who has been convicted of a sexually violent offense against two or more victims for which he or she received a determinate sentence and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (Former § 6600, subd. (a).)

On November 7, 2006, voters approved Proposition 83, "The Sexual Predator Punishment and Control Act: Jessica's Law." It amended the SVPA effective November 8, 2006. In addition to other modifications, Proposition 83 changed an SVP commitment from a two-year term to an indefinite commitment. (§ 6604.) Proposition 83 did not

4

change section 6604's requirement that a person's initial commitment as an SVP be proved at trial beyond a reasonable doubt and section 6605's requirement that current examinations of a committed SVP occur at least once every year (§ 6605, subd. (a)).

Under Proposition 83, the DMH now files an annual report in conjunction with its examination of an SVP, which "shall include consideration of whether the committed person currently meets the definition of a sexually violent predator and whether conditional release to a less restrictive alternative or an unconditional release is in the best interest of the person and conditions can be imposed that would adequately protect the community." (§ 6605, subd. (a).) Subdivision (b) of section 6605 now provides that "[i]f the [DMH] determines that either: (1) the person's condition has so changed that the person no longer meets the definition of a sexually violent predator, or (2) conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, the director shall authorize the person to petition the court for conditional release to a less restrictive alternative or for an unconditional discharge." (§ 6605, subd. (b).) If the state opposes the director's petition, then it must prove beyond a reasonable doubt that the person still meets the definition of an SVP.

If DMH does not authorize the committed person to file a petition for release pursuant to section 6605, the person may file a petition for conditional release for one year and subsequent unconditional discharge pursuant to section 6608. (§ 6608, subd. (a).) Section 6608, subdivision (i), provides: "In any hearing authorized by this section, the petitioner shall have the burden of proof by a preponderance of the evidence." After a trial court denies a section 6608 petition, "the person may not file a new application until one year has elapsed from the date of the denial." (§ 6608, subd. (h).)

Our Supreme Court summarized the effect of Proposition 83: "[U]nder Proposition 83, an individual SVP's commitment term is indeterminate, rather than for a two-year term as in the previous version of the Act. An SVP can only be released conditionally or unconditionally if the DMH authorizes a petition for release and the state does not oppose it or fails to prove beyond a reasonable doubt that the individual still

5

meets the definition of an SVP, or if the individual, petitioning the court on his own, is able to bear the burden of proving by a preponderance of the evidence that he is no longer an SVP. In other words, the method of petitioning the court for release and proving fitness to be released, which under the former [SVPA] had been the way an SVP could cut short his two-year commitment, now becomes the only means of being released from an indefinite commitment when the DMH does not support release." (*McKee I, supra,* 47 Cal.4th at pp. 1187-1188, fn. omitted.)

## II. *The Amended SVPA is Not a Retroactive Application*

Defendant contends that applying Proposition 83 to him, years after the filing of the petition, was a retroactive application of the law. As defendant recognizes, this issue has been decided against him. (*People v. Carroll* (2007) 158 Cal.App.4th 503, 510 (*Carroll*); *Bourquez v. Superior Court* (2007) 156 Cal.App.4th 1275, 1288-1289; see also *People v. Taylor* (2009) 174 Cal.App.4th 920, 932-933.)

The Fifth District in *Carroll* held that imposing an indeterminate term on SVP adjudications made after passage of the amendments from Proposition 83 is not a retroactive application of the law. (*Carroll, supra,* 158 Cal.App.4th at pp. 513-514.) "In order for a law to be retrospective, it must apply to events occurring before it was enacted. (*In re Ramirez* (1985) 39 Cal.3d 931, 936.) Stated another way, '[a] statute has retrospective effect when it substantially changes the legal consequences of *past* events. [Citation.]' (*Western Security Bank v. Superior Court* [(1997)] 15 Cal.4th [232,] 243, italics added.) 'Thus, the critical question for determining retroactivity usually is whether the *last act or event necessary to trigger application of the statute* occurred before or after the statute's effective date. [Citations.] A law is not retroactive "merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment." [Citation.]' (*People v. Grant* (1999) 20 Cal.4th 150, 157, italics added.)" (*Carroll,* at p. 513.)

As *Carroll* explained, because an extension hearing is a new proceeding requiring a new determination of sexually violent predator status based on the person's *current* mental condition, application of the amendments to a case in which a sexually violent

predator determination had not yet been made does not "change the legal consequences of *past* events or conduct." (*Carroll, supra,* 158 Cal.App.4th at p. 513.)  The "significant point with respect to retroactivity is not the filing of the petition, but trial and adjudication under the SVPA.  (*Garcetti v. Superior Court* (1999) 76 Cal.App.4th 685, 694.)  The conduct or event (for want of a better term) to which the SVPA attaches legal consequences is the person's mental condition at the time of adjudication, not at the time the . . . petition is filed." (*Carroll,* at p. 514, fn. omitted.)

Thus, defendant "was subject to recommitment for an indeterminate term because of the status of his mental condition after [the] amendments became effective" (*Carroll, supra,* 158 Cal.App.4th at p. 514) and the amendments were not retroactively applied to him.

### III. *Due Process Claim*

Defendant argues that the amended SVPA violated his due process rights.  The People respond that defendant never objected to the constitutionality of the indeterminate term provision in the trial court and therefore did not preserve the issue for appeal.

We disagree that the issue was waived.  Challenges to the amended SVPA raise issues regarding defendant's substantial rights and, if he had objected, the court could not have cured them.  (See *People v. Saunders* (1993) 5 Cal.4th 580, 589, fn. 5.)  "A defendant is not precluded from raising for the first time on appeal a claim asserting the deprivation of certain fundamental, constitutional rights." (*People v. Vera* (1997) 15 Cal.4th 269, 276-277.)

The issues raised in defendant's challenge on due process grounds were decided against him in *McKee I, supra,* 47 Cal.4th 1172.  In *McKee I,* the defendant asserted that his due process rights were violated by the fact that his commitment was indefinite under the amended statute and that it was now his burden to show by a preponderance of the evidence that he no longer was an SVP.  (*Id.* at p. 1188.)  The court in *McKee I* concluded that an indefinite commitment did not violate the defendant's due process rights.  (*Id.* at p. 1193.)  The court explained that the defendant had already been found to have previously committed the requisite criminal acts and was found beyond a reasonable

7

doubt to have " 'a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' " (*Id*. at p. 1186.) Thus, the requirement that the defendant, after his initial commitment, "must prove by a preponderance of the evidence that he is no longer an SVP does not violate due process." (*Id.* at p. 1191.)

Defendant also challenges the amended SVPA to the extent it permits the court to deny his petition without a hearing. Under section 6608, an SVP may unilaterally petition for release and the court may deny the petition without a hearing only if it finds the petition frivolous. (§ 6608, subd. (a).) The court in *McKee I* held that providing the court with discretion to deny a petition without a hearing as frivolous did not deny the defendant due process because the defendant had no right to a hearing when the issue " 'indisputably has no merit.' " (*McKee I, supra,* 47 Cal.4th at p. 1192.)

Defendant also complains that the amended SVPA reduces his access to the court because he is not entitled to the assistance of an expert. In support of this contention he raises the same points and cites the same authority considered by the Supreme Court in *McKee I, supra,* 47 Cal.4th at pages 1192-1193. Section 6605, subdivision (d) mandates the appointment of experts when the DMH authorizes an indigent inmate to petition for release, but section 6608, subdivision (a) merely provides that petitioner has the right to counsel, with no mention of experts, when he petitions without the DMH's approval. The Supreme Court agreed that expert testimony is critical in an SVP commitment proceeding. (*McKee I,* at p. 1192.) The court observed: "If the state involuntarily commits someone on the basis of expert opinion about future dangerousness, places the burden on that person to disprove future dangerousness, and then makes it difficult for him to access his own expert because of his indigence to challenge his continuing commitment, that schema would indeed raise a serious due process concern." (*Ibid.*) The court, however, rejected this interpretation of the statute and construed section 6608, subdivision (a), to be read in conjunction with section 6605, subdivision (a), and as mandating appointment of an expert for an indigent SVP who petitions the court for release. (*McKee I,* at pp. 1192-1193.) Under this interpretation of the statute, the

8

Supreme Court held that the amended SVPA did not violate the due process clause. (*McKee I,* at p. 1193.)

Accordingly, under the holding of *McKee I*, we conclude that defendant's claim of a due process violation has no merit.

### IV. *Double Jeopardy and Ex-Post Facto Claim*

Defendant contends that the 2006 amended SVPA is punitive and violates the double jeopardy and ex-post facto clauses of the federal Constitution.

Article I, section 10 of the United States Constitution provides: "No state shall . . . pass any . . . ex post facto law. . . ." The ex post facto clause prohibits only those laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." (*Collins v. Youngblood* (1990) 497 U.S. 37, 43.)

The Supreme Court in *McKee I, supra,* 47 Cal.4th 1172, explained that it had already made it clear in *Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, "in considering an ex post facto challenge to the pre-Proposition 83 version of the [SVPA], that the Legislature had 'disavowed any "punitive purpose[ ]," and declared its intent to establish "civil commitment" proceedings in order to provide "treatment" to mentally disordered individuals who cannot control sexually violent criminal behavior. [Citations.] The Legislature also made clear that, despite their criminal record, persons eligible for commitment and treatment as SVP's are to be viewed "not as criminals, but as sick persons." [Citation.] Consistent with these remarks, the [SVPA] was placed in the Welfare and Institutions Code, surrounded on each side by other schemes concerned with the care and treatment of various mentally ill and disabled groups.' (*Hubbart,* at p. 1171.)" (*McKee I,* at pp. 1193-1194.) The court in *McKee I* explained that the "nonpunitive objectives of the [SVPA]—treatment for the individual committed and protection of the  public—remain the same after Proposition 83. Moreover, under the Act after Proposition 83, as before, a person is committed only for as long as he meets the SVP criteria of mental abnormality and dangerousness. As such, the Proposition 83 amendments at issue here cannot be regarded to have changed the essentially nonpunitive purpose of the [SVPA]." (*Id.* at p. 1194.)

9

With regard to the portion of Proposition 83 concerning increased punishment for sex offenses, the court in *McKee I* stated, "But the fact that the amendments to the civil commitment statute are part of the same legislative enactment as amendments to the Penal Code does not render the former amendments punitive." (*McKee I, supra,* 47 Cal.4th at pp. 1194-1195.) Defendant, here, as the defendant in *McKee I,* argues the seven-factor test articulated in *Kennedy v. Mendoza-Martinez* (1963) 372 U.S. 144, 168-169, applies to make Proposition 83 punitive. Our Supreme Court considered the factors and concluded that the "Proposition 83 amendments do not make the [SVPA] punitive and accordingly do not violate the ex post facto clause." (*McKee I,* at p. 1195.)

As noted above, defendant also asserts that the amended SVPA violates the double jeopardy clause of the federal Constitution. He argues that he has already been punished for the crimes underlying his commitment as an SVP and therefore any further punishment for these offenses constitutes double jeopardy. Since the Supreme Court has held that the amended SVPA is not punitive, defendant's double jeopardy argument also fails.

## V. *Equal Protection Claim*

Defendant contends his involuntary commitment as an SVP under the SVPA, as amended by Proposition 83 in 2006, violated his federal constitutional right to equal protection under the law because it treats SVP's significantly less favorably than those similarly situated individuals civilly committed under other statutes. Specifically, he claims that SVP's receive treatment disparate from mentally disordered offenders (MDO) subject to commitment under the Mentally Disordered Offenders Act (Pen. Code, § 2960 et seq.) or those civilly committed because they were not guilty of a crime by reason of insanity (NGI) (Pen. Code, § 1026 et. seq.).

The court in *McKee I, supra,* 47 Cal.4th 1172 held that the SVPA, as amended, potentially violates the equal protection clause of the federal Constitution because SVP's are similarly situated to MDO's and NGI's for purposes of the term of commitment and burden of proof for release. (*Id.* at pp. 1202-1203.) The court concluded that the People must show, "notwithstanding the similarities between SVP's and MDO's, the former as a

10

class bear a substantially greater risk to society, and that therefore imposing on them a greater burden before they can be released from commitment is needed to protect society." (*Id.* at p. 1208.) The Supreme Court remanded the matter before it to the trial court to determine whether the People can demonstrate "the constitutional justification for imposing on SVP's a greater burden than is imposed on MDO's and NGI's in order to obtain release from commitment." (*Id.* at pp. 1208-1209, fn. omitted.)

On remand from *McKee I,* the trial court conducted a 21-day evidentiary hearing and the People presented the testimony of eight witnesses and documentary evidence. McKee presented the testimony of 11 witnesses and documentary evidence. (*McKee II, supra,* 207 Cal.App.4th at pp. 1330, 1332.) The trial court issued a 35-page statement of decision summarizing the testimony and documentary evidence presented at the hearing. (*Id.* at p. 1332.) The trial court found that "the People had met their burden to establish, by a preponderance of the evidence, that the disparate treatment of SVP's under the [amended SVPA] was based on a reasonable perception of the greater and unique dangers they pose compared to MDO's and NGI's." (*Ibid.*) The court confirmed its prior order committing McKee to an indeterminate term. (*Ibid.*)

McKee appealed and the Fourth Appellate District in *McKee II* applied a de novo standard of review and "independently" determined "whether the People presented substantial, factual evidence to support a reasonable perception that SVP's pose a unique and/or greater danger to society than do MDO's and NGI's, thereby justifying the disparate treatment of SVP's under the [amended SVPA]." (*McKee II, supra,* 207 Cal.App.4th at p. 1338.) The appellate court concluded that the People showed " 'that the inherent nature of the SVP's mental disorder makes recidivism as a class significantly more likely[;] . . . that SVP's pose a greater risk [and unique dangers] to a particularly vulnerable class of victims, such as children'; and that SVP's have diagnostic and treatment differences from MDO's and NGI's, thereby supporting a reasonable perception by the electorate that passed Proposition 83 that the disparate treatment of SVP's under the amended Act is necessary to further the state's compelling interests in public safety and humanely treating the mentally disordered." (*Id.* at p. 1347.) Based on

11

the above, the appellate court concluded that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand." (*Id* at p. 1348.) The SVPA, therefore, did not violate equal protection. (*Ibid.*)

As already noted, the California Supreme Court denied review of *McKee II* and this opinion is final.

As in *McKee II,* we agree that defendant's equal protection rights were not violated by treating him differently than MDO's and NGI's for commitment purposes, because the indeterminate commitment procedures legitimately advance a compelling state interest in protecting the public from an SVP, like defendant, who carries a substantial, well-founded risk of reoffending and cannot control his behavior and who poses a greater risk to a particularly vulnerable class of victims such, as here, children. We therefore reject defendant's equal protection challenge.

Defendant contends that *McKee II* was wrongly decided and that we should not follow it. He maintains that the Supreme Court's refusal to grant review does not amount to approval of *McKee II* or preclude other Courts of Appeal from issuing a different opinion.

We agree that ordinarily the opinion of one Court of Appeal is not binding on another Court of Appeal. (See, e.g., *Sarti v. Salt Creek Ltd.* (2008) 167 Cal.App.4th 1187, 1193.) However, the Supreme Court's denial of review is significant. (*DiGenova v. State Board of Education* (1962) 57 Cal.2d 167, 178.) "Although [the Supreme Court's] denial of a hearing is not to be regarded as expressing approval of the propositions of law set forth in an opinion of the District Court of Appeal or as having the same authoritative effect as an earlier decision of this court [citations], it does not follow that such a denial is without significance as to our views [citations]." (*Ibid.*)

In the present situation, the Supreme Court in its order to this and other Courts of Appeal strongly implied that the determination on remand in *McKee II* should, once final, be given considerable weight to "avoid an unnecessary multiplicity of proceedings[.]" The Supreme Court also specified that " '[f]inality of the proceedings' shall include the

finality of any subsequent appeal and any proceedings in this court." Thus, in the present case, the Supreme Court's denial of review in *McKee II* signifies its conclusion that the case was correctly decided and that the holding has statewide significance. Moreover, we agree with the equal protection analysis in *McKee II*.

Defendant's contention that *McKee II* was wrongly decided lacks merit. Defendant argues that the appellate court in *McKee II* did not conduct de novo review. He asserts that the reviewing court deferred to the lower court's ruling because it accepted as accurate the evidence presented by the prosecution without discussing its reliability or credibility. (*McKee II, supra,* 207 Cal.App.4th at p. 1338 & fn. 3.) We agree with Division Three of our court that stated, when addressing the exact same argument as the one presented here, that this contention is "frivolous." (*People v. McKnight* (2012) 212 Cal.App.4th 860, 864; see also *People v. McDonald* (2013) 214 Cal.App.4th 1367, 1378; *People v. Landau* (2013) 214 Cal.App.4th 1, 47-48.) The appellate court in *McKee II* met its obligation by independently reviewing the evidence and concluding that "the disparate treatment of SVP's under the Act is reasonable and factually based and was adequately justified by the People at the evidentiary hearing on remand." (*McKee II,* at pp. 1339-1348.)

Defendant also claims that the appellate court in *McKee II* misapplied the strict scrutiny test and that the evidence did not support the ruling that SVP's are more dangerous than MDO's and NGI's. His arguments are essentially identical to those raised and rejected in *People v. McDonald, supra,* 214 Cal.App.4th 1367. We agree with the reasoning and conclusions in *McDonald* (*id.* at pp. 1379-1382), and reject defendant's arguments.

Accordingly, we conclude that defendant's equal protection claim lacks merit.

13

## DISPOSITION

The court's judgment and order are affirmed.

_____
Lambden, J.

We concur:

_____
Kline, P.J.

_____
Richman, J.

14