Filed 11/7/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF MENDOCINO COUNTY,<br><br>    Respondent;<br><br>JOHN COUTHREN,<br><br>    Real Party in Interest. | A155969<br><br>(Mendocino County Super. Ct. No. SCUK-CRCR-95-20535) |

Following a probable cause hearing, respondent court dismissed the People's petition for civil commitment of real party in interest John Couthren as a sexually violent predator (SVP) under the Sexually Violent Predators Act (Welf. & Inst. Code,[1] § 6600 et seq. (SVP Act)) and referred him for release on parole. At the hearing, the People relied solely on documentary submissions—including the SVP petition and attached expert psychological evaluations—to establish probable cause. The trial court, after construing relevant precedent and considering the Supreme Court's decision in *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), concluded that the psychological evaluations were case-specific hearsay statements submitted for their truth, rendering them inadequate to meet the People's evidentiary burden at a probable cause hearing once an objection had been lodged. In the absence of other competent evidence, the trial court dismissed the petition.

---

[1] All statutory references are to the Welfare and Institutions Code unless otherwise specified.

In these writ proceedings, the People seek extraordinary relief from the trial court's dismissal order, arguing that long-settled precedent permits the People to prove probable cause through use of written expert evaluations, despite their hearsay nature, and that *Sanchez* does not undermine the legitimacy of this procedure. We disagree and deny the petition.

## I. BACKGROUND

In March 2018, the Mendocino County District Attorney filed a petition to commit Couthren as an SVP under the SVP Act. Specifically, the petition alleged that Couthren had been convicted of felony oral copulation in 1973 (Pen. Code, § 288, subd. (a)) and felony kidnapping (*id.*, § 207, subd. (a)) in each of 1979 and 1999, all sexually violent offences pursuant to section 6600, subdivision (b). The petition further alleged that Couthren's most recent term of incarceration was expiring and that he represented a current danger to others. Attached to the petition was a letter from a deputy director of the Department of State Hospitals recommending Couthren's commitment as an SVP, as well as four certified copies of expert evaluation reports from psychologists who examined Couthren. Drs. Hartley, Korpi, and Flinton all opined that Couthren met the statutory criteria for designation as an SVP. Dr. Kokubun disagreed, asserting that Couthren did not currently have a diagnosable mental disorder that predisposed him to the commission of criminal sexual acts.

A probable cause hearing was set for November 26, 2018. In September 2018, the People informed Couthren's attorney that the probable cause hearing would be submitted on the reports of the three concurring psychologists (Hartley, Korpi, and Flinton), but that the report of the dissenting psychologist (Kokubun) had been provided to the court for its information. Although Couthren's counsel initially raised no objection to this procedure, on the date set for hearing he filed a motion in limine, seeking to exclude the expert evaluations on hearsay grounds in light of the Supreme Court's decision in *Sanchez, supra*, 63 Cal.4th 665. Neither the People nor Couthren presented any live testimony at the probable cause hearing. Instead, the People submitted the matter on the certified expert evaluations attached to the petition and certain additional conviction

2

documentation regarding Couthren's prior offenses. After argument regarding the impact of *Sanchez* on this procedure, the court took the matter under submission.

On December 10, 2018, the trial court issued its written ruling with respect to the SVP petition. The court first reviewed the records of conviction submitted by the People and those portions of the expert evaluations discussing the details of Couthren's qualifying convictions, which the court deemed admissible pursuant to section 6600, subdivision (a)(3).[2] It found that the People had sufficiently established the first element under the SVP Act, that Couthren had committed qualifying sexually violent offenses against multiple victims. The court concluded, however, that the remaining elements necessary to support the designation of Couthren as an SVP could not be established solely on the basis of hearsay written evaluations once Couthren's counsel had objected to the admissibility of these reports. Consequently, it found that the People had "failed to present admissible evidence from which a reasonable person could form a strong suspicion that Mr. Couthren suffers from a mental disorder that creates a likelihood that he would engage in sexually violent predatory criminal conduct if released from prison." It dismissed the SVP petition and ordered Couthren referred for release on parole.

The People responded by filing a motion in the trial court seeking a temporary stay of the dismissal order to allow for review of the trial court's ruling. Thereafter, on December 13, 2018, the People filed both the instant writ petition in this court and a corresponding notice of appeal in the superior court (*People v. Couthren*, A156088, ordered deferred Apr. 4, 2019, pending writ proceeding). We issued a temporary stay and, after receiving an informal response and reply, issued an order to show cause that

---

[2] Subdivision (a)(3) of section 6600 permits the use of documentary evidence to establish that an SVP defendant has been previously convicted of qualifying sexually violent offenses under the SVP Act and to show the details underlying the commission of these offenses. We discuss this statutory hearsay exception in further detail below.

requested additional briefing.  Having received that briefing, the matter is now before us for decision.[3]

## II.  DISCUSSION

### A.  *Pertinent Provisions of the SVP Act*

The Legislature enacted the SVP Act in 1995.  (Added by Stats. 1995, ch. 763, § 3; see § 6600 et seq.; *Howard*, *supra*, 70 Cal.App.4th at p. 148.)  In doing so, it " 'expressed concern over a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes.  The Legislature indicated that to the extent such persons are currently incarcerated and readily identifiable, commitment under the [SVP Act] is warranted immediately upon their release from prison.  The [SVP] Act provides treatment for mental disorders from which they currently suffer and reduces the threat of harm otherwise posed to the public.  No punitive purpose was intended.' " (*People v. Otto* (2001) 26 Cal.4th 200, 205 (*Otto*).)  Civil commitment under the SVP Act "can only commence if, after a trial, either a judge or a unanimous jury finds beyond a reasonable doubt that the person is an SVP" (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243 (*Cooley*))—that is, an individual who has been convicted of a sexually violent offense against one or more victims and who has a diagnosable mental disorder that makes it likely that he or she will engage in sexually

---

[3] As stated above, the People filed both a writ petition and a notice of appeal in this matter.  We recognize that the trial court's order dismissing the SVP petition is an appealable order.  (See *People v. Superior Court (George)* (2008) 164 Cal.App.4th 183, 193.)  Nevertheless, our high court has determined in this context that "the People may alternatively seek writ review, and a stay, when the appellate remedy is inadequate [citation] because the dismissal will result in the release of one potentially dangerous to the public." (*People v. Superior Court (Ghilotti)* (2002) 27 Cal.4th 888, 900, fn. 4.)  We join those appellate courts that have found writ review appropriate under similar circumstances.  (See, e.g., *People v. Superior Court (Troyer)* (2015) 240 Cal.App.4th 654, 663; *George*, at p. 193; *People v. Superior Court (Howard)* (1999) 70 Cal.App.4th 136, 147 (*Howard*) [writ review justified where issue is one of first impression and prompt resolution is necessary because question "is one which is certain to arise in nearly every proceeding under the SVP Act"].)

violent criminal conduct of a predatory nature if released. (*Id.* at p. 236; see § 6600, subd. (a)(1).)

"The trial, however, is the last stage of a complex administrative and judicial process to determine whether an offender should be civilly committed as an SVP." (*Cooley*, *supra*, 29 Cal.4th at p. 244.) Before a petition may be filed under the SVP Act, the inmate must first be screened by the Department of Corrections and Rehabilitation, generally at least six months before his or her scheduled release date. (§ 6601, subd. (a).) This screening is conducted in accordance with a structured screening instrument and is "based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history." (*Id.*, subd. (b).) If the Department of Corrections and Rehabilitation determines that the inmate is likely to be an SVP, it refers the matter to the Department of State Hospitals for a "full evaluation" regarding whether the inmate meets the criteria in section 6600. (§ 6601, subd. (b).)

The Department of State Hospitals then designates two psychiatrists or psychologists (§ 6601, subd. (d)) to examine the inmate in accordance with a standardized assessment protocol which requires an "assessment of diagnosable mental disorders, as well as various factors known to be associated with the risk of reoffense among sex offenders." (§ 6601, subd. (c).) If only one evaluator concludes that the inmate meets the criteria for designation as an SVP (as occurred in this case), a further examination of the inmate must be conducted by two independent professionals. (*Id.*, subd. (e).) If both independent professionals concur that the inmate meets the criteria for commitment as an SVP, the director of the Department of State Hospitals forwards a request that a commitment petition be filed to the county in which the inmate was convicted of the offense for which he or she is currently incarcerated. (*Id.*, subds. (f), (h)(1) & (i).) Pursuant to statute, "[c]opies of the evaluation reports and any other supporting documents" shall be made available to the attorney designated by this county (*id.*, subd. (h)(1)), who, if he or she concurs with the recommendation, shall file a commitment petition in superior court (*id.*, subd. (i)). Given this statutory structure and its multiple stages of expert evaluation, our Supreme Court has recognized that the

5

opinions of the mental health professionals designated to examine and evaluate the alleged SVP are "key" to the ultimate determination of whether someone qualifies for commitment under the SVP Act. (*People v. Superior Court (Smith)* (2018) 6 Cal.5th 457, 461; see *People v. McKee* (2010) 47 Cal.4th 1172, 1192 ["expert testimony is critical in an SVP commitment proceeding, in which the primary issue is not, as in a criminal trial, whether the individual committed certain acts, but rather involves a prediction about the individual's future behavior"].)

Once an SVP petition has been filed, "[a] judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) The probable cause hearing is not a determination of the merits of the petition. Rather—as in preliminary proceedings under the criminal law—the sole purpose of the probable cause hearing is to test the sufficiency of the evidence supporting the petition. (*Cooley*, *supra*, 29 Cal.4th at p. 247.) Thus, the trial court at a probable cause hearing under the SVP Act must determine "whether a reasonable person *could entertain a strong suspicion* that the petitioner has satisfied all the elements required for a civil commitment as an SVP." (*Cooley*, at p. 236; see *id*., pp. 251–252.) A failure to find probable cause leads to dismissal of the petition. (§ 6602, subd. (a).) On the other hand, a probable cause determination is followed by a trial on the merits of the SVP petition. (*Ibid.*)

Either party may demand a jury trial in an SVP commitment proceeding. (§ 6603, subds. (a) & (b).) The SVP defendant has the right to the assistance of counsel, to retain experts, and to access relevant psychological and medical reports. (*Id.*, subds. (a) & (j).) The People must prove beyond a reasonable doubt that each of the statutory elements under the SVP Act have been met (§ 6604), that is, the defendant has been convicted of a qualifying sexually violent offense and suffers from a diagnosable mental disorder that makes it likely he or she will engage in sexually violent criminal conduct of a predatory nature if released from prison. (See *Cooley*, *supra*, 29 Cal.4th at p. 236.) A jury verdict must be unanimous. (§ 6603, subd. (f).) The remaining provisions of the SVP Act

6

contain procedures related to periodic review, treatment, and conditional or unconditional release.  (§§ 6604.9–6609.3.)

### B.  *Use of Hearsay at Probable Cause Hearings Under the SVP Act*

The instant petition presents a matter of first impression, whether psychological assessments that evaluate whether a person meets the statutory criteria for civil commitment under the SVP Act may be admitted *in toto* as competent evidence to establish probable cause.  The answer to this question requires examining whether the rules of evidence governing the admissibility of hearsay apply at a probable cause hearing held under the SVP Act.  We conclude that the rules of evidence apply in an SVP probable cause proceeding and therefore the admissibility of documentary evidence such as expert evaluations will be governed by the hearsay rule and any applicable exceptions.

Established principles guide our analysis.  "Except as otherwise provided by statute," the Evidence Code applies in all actions other than those before a grand jury.  (Evid. Code, § 300; see, e.g., *In re Kirk* (1999) 74 Cal.App.4th 1066, 1071–1073 (*Kirk*) [citing Evid. Code, § 300 in concluding that the certification requirements of Evid. Code, §§ 1530 & 1531 applied to SVP probable cause hearings].)  Hearsay consists of an out-of-court statement made by someone other than a testifying witness offered to prove the truth of the matter stated, and is generally inadmissible unless it falls under an exception.  (Evid. Code, § 1200, subds. (a), (b); see *Sanchez, supra*, 63 Cal.4th at p. 674.)  Multiple hearsay, or hearsay-within-hearsay, is admissible only when each level of hearsay "meets the requirements of an exception to the hearsay rule."  (Evid. Code, § 1201; see *Sanchez*, at p. 675.)

The parties agree that the expert evaluations at issue in this case are hearsay, as they are out-of-court statements prepared by the authoring psychologist or psychiatrist offered for the truth of the matters described therein.  SVP evaluations are typically comprehensive and draw from numerous sources, including probation and police reports, investigative reports from prosecuting agencies, court records and transcripts, face-to-face interviews with the SVP defendant, prison and hospital rule violation reports, records of arrests, convictions and juvenile dispositions, and hospital records, including

7

staff treatment notes, medication reports, and attendance records. Where an evaluation author relies upon and relates statements from secondary sources to prove the truth of the information they contain, these out-of-court statements constitute further levels of hearsay. For example, an expert evaluation may convey statements from a police report quoting a crime victim's recollections concerning the SVP defendant. Each level of hearsay, the expert evaluation, the police report, and the victim's statement, must fall within an exception to be admitted into evidence. (Evid. Code, § 1201.)

Several courts have held that experts may not relate case-specific hearsay at an SVP civil commitment trial unless the out-of-court statement is covered under a hearsay exception or has been independently established by competent evidence. (See, e.g., *People v. Yates* (2018) 25 Cal.App.5th 474, 476 (*Yates*) [concluding it was error to allow expert testimony at an SVP trial relating case-specific hearsay that was outside the expert's personal knowledge and not otherwise admissible under an exception]; *People v, Roa* (2017) 11 Cal.App.5th 428, 452–453 (*Roa*) [expert testimony relating case-specific hearsay from investigative reports and state hospital records in SVP trial should have been excluded].) In *People v. Burroughs* (2016) 6 Cal.App.5th 378 (*Burroughs*), the court concluded that certain documentary evidence was admissible under section 6600, subdivision (a)(3) to provide details about qualifying sexually violent convictions, but the trial court erred in admitting evidence of other uncharged offenses and " 'information about appellant's prior record, adult history, personal history, physical/mental/emotional health, education, employment, and terms and conditions of probation.' " (*Burroughs*, at p. 410.) Such evidence was not relevant or admissible to prove the qualifying convictions and was not covered by a separate hearsay exception. (*Id.* at pp. 410–411.)

Although these authorities primarily rely on changes in law announced under *Sanchez, supra*, 63 Cal.4th 665, several pre-*Sanchez* courts have similarly concluded that an expert testifying at an SVP trial may not relate incompetent hearsay under the guise of explaining his or her reasoning if such testimony is unreliable, irrelevant, or its potential for prejudice outweighs its probative value. (See *People v. Dean* (2009) 174 Cal.App.4th 186, 197 (*Dean*), citing *People v. Catlin* (2001) 26 Cal.4th 81, 137 (*Catlin*).) In *Dean*,

8

experts at an SVP trial were permitted to relate secondhand details from the defendant's state hospital and prison records, including alleged incidents with staff and "other acts of misconduct, of which there was no competent evidence." (*Dean*, at pp. 198, 199.) Testimony by one expert was found to be "highly inflammatory, and, without the foundational testimony concerning the records, . . . of questionable reliability." (*Id.* at p. 200.) The court concluded the trial court erred by allowing incompetent hearsay to be presented to the jury, although the error was deemed harmless because the trial court had instructed the jury not to consider the expert's testimony for its truth. (*Id.* at p. 201; see *People v. Landau* (2016) 246 Cal.App.4th 850, 877 (*Landau*) [concluding expert testimony relating the contents of defendant's state hospital records at an SVP trial should have been excluded and noting the expert was in no position to establish the foundation for, or reliability of, these records].)

The foregoing precedent makes clear that at an SVP civil commitment *trial*, rules of evidence do not permit experts to relate as true case-specific facts gleaned from secondhand sources about which the expert has no personal knowledge, unless these facts have been independently admitted into evidence or fall within a hearsay exception. While portions of an expert evaluation may be admissible under an applicable exception, for example details about a qualifying conviction may be introduced under section 6600, subdivision (a)(3), no statutory exception to hearsay permits the wholesale admission of expert evaluation reports at an SVP trial. It follows that the general rules precluding admission of hearsay and multiple levels of hearsay must apply at an SVP probable cause hearing as well. (Evid. Code, § 300.)

Nothing in the SVP Act suggests that the Legislature intended for the rules of evidence, including the hearsay rule, to be suspended at a probable cause hearing. Section 6602, the provision requiring a probable cause determination, states in relevant part that "[a] judge of the superior court shall review the petition and shall determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) It further provides that the SVP defendant has a right to a "probable

9

cause hearing" and to the assistance of counsel. (*Ibid.*) We see nothing in the plain language of section 6602 indicating that the Legislature intended to create a broad hearsay exception for expert evaluation reports, much less for the multiple-level hearsay contained in such reports.

In contrast, the Legislature plainly "knows how to craft [a hearsay] exception when one is intended." (*Burroughs*, *supra*, 6 Cal.App.5th at p. 402.) Indeed, it did so elsewhere in the SVP Act by amending the statute shortly after its enactment to add section 6600, subdivision (a)(3).[4] (See Stats. 1996, ch. 462, § 4.) As mentioned above, pursuant to this provision "the People may prove . . . the existence and details underlying the commission of the predicate offense(s) . . . 'by introducing "documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals." ' " (*Yates*, *supra*, 25 Cal.App.5th at p. 477.) The Legislature amended the SVP Act to add subdivision (a)(3) "after prosecutors complained that 'they must bring victims back to court to re-litigate proof of prior convictions.' " (*Otto*, *supra*, 26 Cal.4th at p. 208.)

In *People v. Stevens* (2015) 62 Cal.4th 325, the Supreme Court cited section 6600, subdivision (a)(3), to illustrate that "the Legislature knows how to adopt special rules of evidence to govern commitment proceedings." (*Stevens*, at p. 338.) It rejected an argument that would have broadly construed the Mentally Disordered Offenders Act to

---

[4] Subdivision (a)(3) of section 6600 reads in full as follows: "Conviction of one or more of the crimes enumerated in this section shall constitute evidence that may support a court or jury determination that a person is a sexually violent predator, but shall not be the sole basis for the determination. The existence of any prior convictions may be shown with documentary evidence. The details underlying the commission of an offense that led to a prior conviction, including a predatory relationship with the victim, may be shown by documentary evidence, including, but not limited to, preliminary hearing transcripts, trial transcripts, probation and sentencing reports, and evaluations by the State Department of State Hospitals. Jurors shall be admonished that they may not find a person a sexually violent predator based on prior offenses absent relevant evidence of a currently diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."

allow experts to testify regarding the nature of the commitment offenses or to convey the content of hearsay documents in order to establish the commission of those offenses. The high court noted that, should it choose to do so, the Legislature was "free to create exceptions to the rules of evidence as it has done in the SVP context." (*Id.* at p. 339; see *id.* at pp. 335–339.)

Similarly, in *Kirk*, *supra*, 74 Cal.App.4th 1066, our own First District saw no reason for evaluation reports submitted at SVP probable cause hearings to be exempted from certification requirements under the Evidence Code. (*Kirk*, at p. 1073.) In analyzing the question, the court pointed to the Legislature's suspension of the rules of evidence for civil commitment proceedings under the Lanterman-Petris-Short (LPS) Act. (See *Kirk*, at pp. 1072–1073 [citing § 5256.4, subd. (b), which provides that, at LPS certification hearings, "The hearing shall be conducted in an impartial and informal manner in order to encourage free and open discussion by participants. The person conducting the hearing shall not be bound by rules of procedure or evidence applicable in judicial proceedings."].) Noting that "the Legislature has demonstrated its ability to articulate exemptions from the evidentiary rules," the *Kirk* court found it significant that the Legislature had "failed to do so with respect to certification issues involved in SVP proceedings." (*Kirk*, at p. 1073.) We too find it meaningful that the Legislature has not exempted SVP probable cause hearings from the rules of evidence or created an express hearsay exception that permits evaluation reports to be admitted in their entirety in such proceedings.

The People contend that section 6602 establishes a hearsay exception for expert evaluations at the probable cause hearing on the basis of the trial court's obligation to "review the petition." The People argue this necessitates review of expert evaluations attached to a civil commitment petition. Nothing in the statutory language permits such a reading. Expert evaluations are not mentioned in this provision. Further, there is no stated requirement, in section 6602 or elsewhere in the SVP Act, that expert evaluations be attached to, or otherwise incorporated into, the petition. Rather, the SVP Act provides only that, if the Department of State Hospitals determines that a person qualifies for

11

commitment under the SVP Act, it "shall forward a request for a petition to be filed" to the appropriate county attorney, making available "[c]opies of the evaluation reports and any other supporting documents." (§ 6601, subd. (h)(1).) And, if that attorney concurs, "a petition for commitment shall be filed." (*Id.*, subd. (i).) The SVP Act thus omits any mention of what an SVP petition should contain. Under the People's argument, section 6602 would give license to allow *any* document attached to an SVP petition to be admitted into evidence, thus depriving the trial court of its gatekeeping function to test the competency and reliability of such evidence. We decline to infer a seemingly limitless hearsay exception on the basis of a simple directive that the court "review the [SVP] petition." (§ 6602, subd. (a).)[5]

The People's argument, moreover, is difficult to square with the hearsay exception the Legislature unambiguously enacted under the SVP Act to respond to the burden facing victims having to testify in SVP proceedings. Subdivision (a)(3) of section 6600 permits the admission of documentary evidence to prove the existence and details concerning predicate offenses under the SVP Act. (*Otto*, *supra*, 26 Cal.4th at p. 206.) Our Supreme Court concluded that by expressly allowing "the use of presentence reports at the SVP proceeding to show the details of the crime, the Legislature necessarily endorsed the use of multiple-level-hearsay statements that do not otherwise fall within a

---

[5] Where a hearsay exception has been implied in other contexts, the statutory language at issue has specifically referenced the documentary evidence the court is permitted to review. (See *In re Malinda S*. (1990) 51 Cal.3d 368, 376–382, partially superseded by statute as explained in *In re I.C*. (2018) 4 Cal.5th 869, 884–885 [§ 281, which authorizes the juvenile court "to receive and consider" reports by probation officers or social workers "in determining" juvenile matters, impliedly created a hearsay exception for the various hearsay statements contained in such reports]; *Conservatorship of Manton* (1985) 39 Cal.3d. 645, 648–652 & fn. 2 [construing § 5324, subd. (a), to permit admission of hearsay investigation reports at the preliminary hearing stage of conservatorship proceedings on basis of statutory language stating " 't]he court may receive the [conservatorship investigation] report in evidence and may read and consider the contents thereof in rendering its judgment' "]; see *Otto, supra*, 26 Cal.4th at p. 206 [express hearsay exception for documentary evidence in § 6600, subd. (a)(3) created an implied exception for the multiple hearsay contained in the documents].)

hearsay exception." (*Id.* at p. 208.) This "expansive hearsay exception . . . was intended to relieve victims of the burden of testifying about the details of crimes committed many years ago." (*Roa*, *supra*, 11 Cal.App.5th at p. 443.) However, section 6600, subdivision (a)(3) does not authorize the use of documentary evidence that bears no relation to qualifying SVP convictions or the details of such offenses. (See *Burroughs*, *supra*, 6 Cal.App.5th at pp. 410–411; *Yates*, *supra*, 25 Cal.App.5th at pp. 485–486.) Given this express limitation on the scope of the hearsay exception, it would be incongruous for the Legislature to have already enacted a hearsay exception under section 6602, one which allows the use of multiple-level hearsay in an expert evaluation for *any* purpose. If such an exception already existed by virtue of the statutory command to "review the petition," there would have been no need to pass section 6600, subdivision (a)(3). The legislative history behind passage of section 6600, subdivision (a)(3) belies this theory. (See *Otto*, at pp. 208, 209 [noting that prior to amendment of § 6600, "the SVPA did not permit the use of documentary evidence"].) For all these reasons, we conclude the Legislature did not exempt SVP probable cause hearings from evidentiary rules concerning hearsay or create a statutory exception to hearsay that authorizes the wholesale admission of expert evaluation reports in SVP proceedings.

It is true that exceptions to hearsay may be found not only in statutory code but also fashioned by decisional law. (*Otto*, *supra*, 26 Cal.4th at p. 207.) Relying largely on *In re Parker* (1998) 60 Cal.App.4th 1453 (*Parker*), the People contend that decisional law has recognized such an exception at the probable cause stage for expert evaluations prepared in connection with SVP proceedings. However, it does not appear that the propriety of admitting the multiple hearsay contained in SVP evaluator reports at probable cause hearings has been squarely addressed or authorized by existing precedent.

Shortly after the SVP Act was enacted in 1995, the *Parker* court was called upon to "determine the nature" of the probable cause hearing required by section 6602. (*Parker*, *supra*, 60 Cal.App.4th at pp. 1455–1456.) The trial court in that case had concluded that only a facial review of the documents submitted by the People was necessary to support its finding of probable cause. (*Id.* at p. 1460.) Parker challenged the

court's probable cause finding on the basis that the SVP Act and due process of law required a full adversarial evidentiary hearing at the probable cause stage. (*Id.* at pp. 1460–1461.) In the absence of these due process protections, Parker contended the trial court relied upon the "impermissible hearsay" of the experts' evaluation reports which had been attached to the SVP petition. (*Ibid.*)

The *Parker* court found the statutory language of section 6602 ambiguous as to the type of probable cause hearing the Legislature envisioned. (*Parker*, *supra*, 60 Cal.App.4th at pp. 1463–1465.) It therefore considered the legislative history (which provided "little assistance"), the statutory scheme as a whole, and analogous civil commitment and criminal probable cause procedures to determine what process for these section 6602 " 'interim' proceedings" was both intended by the Legislature and sufficient to afford due process. (*Id.* at pp. 1461–1468.) In the end, the *Parker* court resolved that the Legislature intended for a person subject to an SVP petition and facing the loss of his or her liberty to be afforded "a hearing at which the person could be heard, not merely by counsel pointing out legal deficiencies on the face of the petition, but also by being able to effectively challenge the facts on which the petition was filed, i.e., the underlying attached experts' evaluations." (*Id.* at p. 1468.) A probable cause hearing under the SVP Act should thus allow for the admission of oral and written evidence, as well as the calling of relevant witnesses. (*Id.* at pp. 1469–1470.) The court further stated: "While we believe the prosecutor may present the opinions of the experts through the hearsay reports of such persons, the prospective SVP should have the ability to challenge the accuracy of such reports by calling such experts for cross-examination." (*Ibid.*)

In *People v. Cheek* (2001) 25 Cal.4th 894, the Supreme Court considered section 6605, a provision of the SVP Act related to petitions for unconditional release from civil commitment. In delineating the requirements for a "show cause" hearing under that statute, the Court concluded that sections 6602 and 6605 were similar pretrial hearing provisions located in the same statute and should thus be construed to provide the same procedural rights. (*Id.* at pp. 899–900.) Since the *Parker* court had determined that a potential SVP at a probable cause hearing under section 6602 has a due process right to

14

present oral testimony, including expert testimony, and to cross-examine the authors of adverse evaluation reports, the *Cheek* court opined that similar procedural protections must be available to an SVP at a show cause hearing with respect to unconditional release.[6] (*Cheek*, at p. 900.)

Finally, in *Cooley*, *supra*, 29 Cal.4th 228, our high court considered at length the substantive determinations required of the trial court at the probable cause stage of SVP proceedings. (*Id.* at pp. 246–256.) As part of this discussion, the *Cooley* court remarked in passing: "The SVPA does not provide any specific procedural requirements for the probable cause hearing. The parties do not dispute, however, that the hearing includes cross-examination of any experts relied on by the petitioner and the presentation of oral and written evidence bearing on probable cause. [Citation.] Although the petitioner is allowed, despite their hearsay nature, to present the contents of any reports that form the basis of the petition as evidence, the alleged sexual predator is allowed to cross-examine the expert concerning the evaluation and can call the expert to the stand for that purpose." (*Cooley*, at p. 245, fn. 8, citing *Parker*, *supra*, 60 Cal.App.4th at pp. 1468–1470.)

While *Parker* and *Cheek* endorsed the use of oral and written evidence at probable cause and "show cause" hearings under the SVP Act, both decisions were concerned solely with whether something *more* than a facial review of the relevant petition was required, given the ambiguity in the statutory language and the liberty interest at stake in these proceedings. In the *Parker* court's examination whether the prosecutor should be allowed to present the opinions of the experts through their hearsay reports, the court's focus was on what due process required to allow potential SVPs a meaningful opportunity to contest the petition. *Parker* provides no analysis supporting the free admission of the evaluators' reports as competent evidence to support a finding of

---

[6] Notably, section 6605 was amended by the electorate after *Cheek* and now expressly provides that "the court . . . can consider the petition and any accompanying documentation provided by the medical director, the prosecuting attorney, or the committed person" at the show cause hearing. (§ 6605, subd. (a)(1) (Prop. 83, § 29, eff. Nov. 8, 2006); see § 6604.9, subd. (f).) No similar amendment was made to section 6602.

15

probable cause and contains no discussion regarding the competency of the multiple hearsay necessarily contained within such expert evaluations. *Cheek* does not mention the admissibility of hearsay at all, simply concluding that sections 6602 and 6605 should be construed in a similar fashion to allow for a proper rebuttal of the prosecutor's case.

Nor does *Cooley* provide the decisional basis for allowing the hearsay admission of SVP expert evaluations at the probable cause stage of SVP proceedings. While *Cooley* recognized in a footnote that oral and written evidence may be presented at such a hearing, citing *Parker*, it did so in the context of describing matters which were not disputed by the parties and therefore not analyzed by the court. On the contrary, *Cooley*'s determination that an SVP probable case hearing is analogous to a criminal preliminary hearing suggests the court would have disallowed the use of multiple hearsay in a probable cause hearing had it reached these evidentiary matters. *Cooley* explained that an SVP probable cause hearing serves the same purpose as a criminal preliminary hearing, in that "both serve to ' " 'weed out groundless or unsupported charges . . . and to relieve the accused of the degradation and expense of a . . . trial.' " ' " (*Cooley*, *supra*, 29 Cal.4th at p. 247 [noting the object of both hearings is "to test the sufficiency of the evidence"].) The *Cooley* court thus adopted the same probable cause standard used in criminal preliminary hearings as the burden of proof in an SVP probable cause hearing. (*Id.* at pp. 250–252; see *id*. at pp. 256–258 [adopting the same standard of appellate review of the trial court's probable cause determination].)

In light of the Supreme Court's conclusion that the SVP probable cause hearing should be modeled after the criminal preliminary hearing (*Cooley*, *supra*, 29 Cal.4th at p. 257), we find it significant that multiple hearsay is inadmissible at a preliminary hearing in a criminal matter. (Pen. Code, § 872, subd. (b); *Whitman v. Superior Court* (1991) 54 Cal.3d 1063, 1072–1074 (*Whitman*).) While Penal Code section 872 permits a finding of probable cause at a preliminary hearing on the basis of hearsay statements related by a police officer with certain qualifications and experience, the ballot measure that enacted this hearsay exception "did not purport to create a similar exception for the multiple hearsay rule of Evidence Code section 1201." (*Whitman*, at p. 1074; see *id.* at

16

pp. 1073–1074 [testimony by a noninvestigating officer or "reader" that merely recites the contents of reports of the investigating officer is inadmissible].)[7] No *documentary* hearsay exception is recognized in a criminal preliminary hearing proceeding, and certainly no exception that permits multiple levels of documentary hearsay to be introduced. We thus conclude that, regardless of any past practices in the counties with respect to the probable cause determination of SVP petitions, neither statute nor decisional law authorizes the wholesale admission of the reports of expert evaluators for their truth at SVP probable cause hearings.

## C. *Impact of* **Sanchez** *on Probable Cause Hearings Under the SVP Act*

Even if it could be said that prior precedent recognized a hearsay exception broadly allowing expert evaluations to be admitted at SVP probable cause hearings, we would conclude such an exception is no longer tenable in the wake of *Sanchez*, *supra*, 63 Cal.4th 665. In *Sanchez*, the California Supreme Court considered the admissibility of expert evidence and the propriety of an expert relating case-specific hearsay under the rules of evidence.

---

[7] The *Whitman* court observed that allowing testimony from a noninvestigating officer who has no knowledge of the circumstances in which the out-of-court statements were made risks introducing unreliable evidence at a preliminary hearing and would raise constitutional concerns over the criminal defendant's right to confront and cross-examine witnesses. (*Whitman*, *supra*, 54 Cal.3d at pp. 1073–1074.) Although proceedings under the SVP Act are civil in nature and thus "[t]here is no right to confrontation under the state and federal confrontation clause" in these proceedings (*Otto*, *supra*, 26 Cal.4th at p. 214), they are nevertheless accorded due process protections because of the significant deprivation of liberty at stake. (*Id.* at pp. 209–211 [notwithstanding multiple hearsay exception under SVP Act, due process requires the trial court to examine hearsay evidence for its reliability and exclude incompetent evidence].) We question whether the procedure articulated in *Parker* is sufficiently protective of due process interests. Even if an SVP defendant is allowed to cross-examine the authors of expert evaluations in a probable cause hearing, the report authors are often in no position to verify the accuracy or reliability of out-of-court statements from secondhand sources such as hospital records or probation reports. (See, e.g., *Landau*, *supra*, 246 Cal.App.4th at p. 877.) Unless the hearsay statements are independently admitted or bear the indicia of reliability by falling under a hearsay exception, cross-examination of the report authors is not likely to shed light on the competency of the evidence.

The hearsay rule has traditionally not barred testimony from an expert regarding that expert's general knowledge in his or her field of expertise, even if such knowledge is derived from hearsay sources. (*Sanchez*, *supra*, 63 Cal.4th at p. 676.) In addition, an expert witness generally "may state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based." (Evid. Code, § 802.) Thus, an expert may explain to the jury the "matter" upon which he or she relied "even if that matter would ordinarily be inadmissible." (*Sanchez*, at p. 679.)

In contrast, an expert was traditionally *not* allowed to relate case-specific facts as true if the expert had no personal knowledge on which to base his or her hearsay testimony. (*Sanchez*, *supra*, 63 Cal.4th at p. 676.) Over time, however, the distinction between general and case-specific information became blurred, and courts attempted to resolve the problem of experts supplying case-specific hearsay by instructing juries that matters admitted through an expert should not be considered for their truth but only as the basis for the expert's opinion. (*Id.* at pp. 676–679.) For example, in *People v. Montiel* (1993) 5 Cal.4th 877, disapproved on this point by *Sanchez*, at page 686, footnote 13, the Supreme Court opined: "Because an expert's need to consider extrajudicial matters, and a jury's need for information sufficient to evaluate an expert opinion, may conflict with an accused's interest in avoiding substantive use of unreliable hearsay, disputes in this area must generally be left to the trial court's sound judgment. [Citations.] Most often, hearsay problems will be cured by an instruction that matters admitted through an expert go only to the basis of his opinion and should not be considered for their truth." (*Id.* at p. 919; see *Catlin*, *supra*, 26 Cal.4th at pp. 137–138; *People v. Gardeley* (1996) 14 Cal.4th 605, 618–619, disapproved on this point by *Sanchez*, at p. 686, fn. 13.) A statement not offered for its truth is, definitionally, not hearsay. (*Sanchez*, at p. 674; see Evid. Code, § 1200, subd. (a).) Even under this legal construct, however, an expert could not " 'under the guise of reasons [for an opinion] bring before the jury incompetent hearsay evidence.' " (*People v. Coleman* (1985) 38 Cal.3d 69, 92, disapproved on another ground in *Sanchez*, at p. 686, fn. 13.) This was the state of the law when the SVP

18

Act was enacted in 1995 and when *Parker*, *Cheek*, and *Cooley* were subsequently decided.

*Sanchez* jettisoned the not-for-the-truth-of-the-matter rationale that had previously allowed for the admission of expert testimony involving otherwise inadmissible case-specific facts, stating: "When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth." (*Sanchez*, *supra*, 63 Cal.4th at p. 686 & fn. 13.) "Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried." (*Id.* at p. 676.) Such statements may not be related by an expert as true "unless they are independently proven by competent evidence or are covered by a hearsay exception." (*Id.* at p. 686.)

*Sanchez* is not limited to criminal proceedings. As discussed above, several courts have applied *Sanchez*'s holding in the context of SVP trials, finding error where expert testimony related case-specific facts to the jury that "were neither subject to a hearsay exception nor independently established by competent evidence." (*Yates*, *supra*, 25 Cal.App.5th at p. 485; see *People v. Flint* (2018) 22 Cal.App.5th 983, 1000–1006; *Roa*, *supra*, 11 Cal.App.5th at pp. 452–453; *Burroughs*, *supra*, 6 Cal.App.5th at pp. 407–411.) In *Yates*, for example, "except for Yates's own statements to the experts, which were admissible as party admissions (Evid. Code, § 1220), all of the case-specific facts related by the experts were drawn from documents—Yates's criminal, juvenile, and state hospital records—that were neither introduced [nor] admitted into evidence, nor shown to fall within a hearsay exception." (*Yates*, at p. 485.) Although many of Yates's criminal records would have been admissible under the hearsay exception created by section 6600, subdivision (a)(3) (*Yates*, at p. 485), and hospital records and similar documents are often admissible as business records if properly authenticated, the trial court erred in allowing expert testimony relating case-specific hearsay contained in those records where the

19

documents had not been properly presented to the court and "there was no blanket hearsay exception for the experts' testimony." (*Id.* at p. 486.)

Although *Sanchez* was concerned with expert testimony rather than documentary evidence, its holding that an expert may not relate case-specific facts as true unless they are independently proven by competent evidence or are covered by a hearsay exception applies with equal force to the admissibility of written expert evaluations. In both contexts, an SVP defendant has an interest in avoiding the substantive use of unreliable hearsay. The hearsay rule safeguards against the use of incompetent hearsay evidence, and we can discern no basis for excluding this important protection, or the *Sanchez* rule, from an SVP probable cause determination.

Our conclusion is further buttressed by the Second District's recent decision in *Bennett v. Superior Court* (2019) 39 Cal.App.5th 862 (*Bennett*). Bennett was convicted of two rapes stemming from two separate incidents in August 1986 in which he broke into a house late at night and raped a woman while under the influence of alcohol. Bennett had also been convicted of a March 1986 burglary, which he later acknowledged involved an attempted rape. (*Id.* at p. 868.) He was sentenced to 42 years four months in state prison and released in 2008. (*Ibid.*) In 2012, Bennett was charged with forcible rape and forcible oral copulation based on allegations he had offered a woman a ride, taken her to his home, and forced himself upon her. Bennett consistently denied the allegations of nonconsensual sex. (*Id.* at p. 869.) The two rape-related counts were eventually dismissed after the prosecution was unable to locate the alleged victim, but Bennett was convicted of failing to register as a sex offender (*ibid.*) and received a seven-year sentence (*id.* at p. 868).

Civil proceedings were then initiated to have Bennett declared an SVP. (*Bennett*, *supra*, 39 Cal.App.5th at p. 868.) At the SVP probable cause hearing, the People's experts introduced details related to the 2012 incident, both through their testimony and in their expert evaluations. (*Id.* at p. 880.) The information with respect to the 2012 incident was critical to the experts' opinion that Bennett was an SVP because it established him as a serial rapist. (*Id.* at pp. 871–872.) Relying on *Sanchez,* the court

20

concluded that, since no admissible evidence had been introduced to substantiate the 2012 allegation, it was error to permit expert testimony about it. (*Id.* at p. 880.) In doing so, the appellate court rejected the People's argument that the hearsay rule and *Sanchez* should not be applied at SVP probable cause hearings. (*Id.* at pp. 882–883.) After discussing both *Parker* and *Cooley*, the court opined: "We believe that a challenge to the admissibility of a key piece of evidence upon which the experts relied and testified to is consistent with *Parker* and *Cooley*'s findings that a defendant may challenge the accuracy of the expert reports at the probable cause hearing. The issue in this matter is not simply whether the prosecution may present an expert's conclusions at the probable cause hearing through the introduction of the expert's report. Instead, the issue is whether a defendant may challenge the introduction of case-specific hearsay by an expert who has no personal knowledge of such facts and that is not subject to a hearsay exception." (*Id.* at p. 883.) The court further concluded that "to the extent (if any) that *Parker* could have been read as allowing the prosecution at a probable cause hearing to introduce otherwise inadmissible case-specific hearsay evidence solely through the testimony and reports of its experts, such a reading would not pass muster following *Sanchez*." (*Ibid.*)

The People raise a different argument in this matter than the one presented in *Bennett*. Rather than arguing that the formal rules of evidence, including the hearsay rule, do not apply at all in SVP probable cause hearings, the People here contend that an implied exception to the hearsay rule exists solely with respect to the expert evaluation reports at such hearings. Were the People correct, then any case-specific facts detailed in those expert evaluations would be covered by the hearsay exception and could therefore be the proper subject of expert testimony under *Sanchez*. For the reasons explained, neither statutory nor decisional law supports the People's argument. Accordingly, we conclude the trial court did not err in finding that there was insufficient admissible evidence before it to support a finding of probable cause in this case.

21

## III.  DISPOSITION

The petition is denied.  The stay previously issued by this court will be dissolved upon the finality of this decision.[8]

---

[8] We recognize that our decision represents a change in the procedures applicable to probable cause hearings under the SVP Act.  Because we are dismissing the People's petition for writ of mandamus, we are without authority to remand for a new probable cause hearing.  We express no opinion whether the trial court retains the discretion to reconsider its probable cause finding in light of the standards announced today.

                                        _____
                                        Sanchez, J.


WE CONCUR:


_____
Humes, P. J.


_____
Banke, J.


*A155969 People v. Superior Court (Couthren)*

Trial Court:   Mendocino County Superior Court

Trial Judge:   Hon. Cindee Mayfield

Counsel:

Xavier Becerra, Attorney General, Gerald A. Engler and Jeffrey M. Laurence, Assistant Attorneys General, Moona Nandi and Bridget Billeter, Deputy Attorneys General, for Petitioner.

Jeffrey A. Aaron, Public Defender, Eric O. Rennert, Chief Deputy Public Defender, Robert C. Smith, Deputy Public Defender, for Real Party in Interest.

*A155969 People v. Superior Court (Couthren)*